UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOHEIL K. SHARAFABADI,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF IDAHO, et al.,<br><br>Defendants. | CASE NO. C09-1043JLR<br><br>ORDER ON PNW'S AND L.A. HEARNE'S MOTIONS TO DISMISS |

## I. INTRODUCTION

This matter comes before the court on Defendant Pacific Northwest Farmers Cooperative, Inc.'s ("PNW") motion to dismiss (Dkt. # 14) and Defendant L.A. Hearne Company's ("L.A. Hearne") motion to dismiss (Dkt. # 24). PNW and L.A. Hearne request that the court dismiss Plaintiff Soheil K. Sharafabadi's direct and indirect patent infringement claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Having reviewed the motions, as well as all papers filed in support and opposition, and

ORDER- 1

deeming oral argument unnecessary, the court GRANTS in part and DENIES in part PNW's motion to dismiss (Dkt. # 14) and GRANTS L.A. Hearne's motion to dismiss (Dkt. # 24).

## II. BACKGROUND

This is a patent infringement action concerning United States Patent No. 4,980,186 ("'186 Patent"), titled "Pseudoplastic Yellow Mustard Gum." (Compl. (Dkt. # 1) ¶ 13 & Ex. 1 ('186 Patent).) Plaintiff Soheil K. Sharafabadi, a Canadian citizen proceeding *pro se*, is the inventor and owner of the '186 Patent. (*Id.* ¶ 1.) The patent abstract describes the '186 Patent as "[a]n improved process of gum extraction from whole yellow mustard seed . . . ." (*Id.*, Ex. 1.) In general terms, the '186 Patent involves a time-temperature interdependent process of extracting gum (or mucilage) from yellow mustard seeds by treating the seeds in hot water.

In 1992, the University of Idaho allegedly began using the '186 Patent as a research tool in the course of its breeding program for advanced yellow mustard seed lines and cultivars. (*Id.* ¶ 23.) The breeding program resulted in the development of the IdaGold yellow mustard seed. (*Id.*) The mucilage content of the IdaGold seed "is significantly and markedly higher (better quality) than in any of the alternative cultivars available." (*Id.*, Ex. 2.) Mr. Sharafabadi contends that the University of Idaho used the '186 Patent as an efficient method to test the mucilage content of its seeds while developing the IdaGold seed. (*E.g.*, *id.* ¶ 28.)

PNW is an Idaho non-profit agricultural cooperative that sells mustard seeds, including the IdaGold, to farmers, seed companies, and chemical dealers.[1] (*Id.* ¶ 39; Declaration of Bill Newbry ("Newbry Decl.") (Dkt. # 15) ¶¶ 1, 6-8.) In 2003, the University of Idaho began licensing the IdaGold seeds to PNW's predecessor-in-interest, Genesee Union Warehouse Cooperative ("Genesee").[2] (Compl. ¶ 38.) Genesee distributed or sold the IdaGold seeds. (*Id.*) In 2008, Genesee merged with another entity to form PNW, which continues to sell the IdaGold seeds. (*Id.* ¶ 39.) Mr. Sharafabadi alleges that PNW and Genesee use or used the '186 Patent as a quality-control method for the IdaGold seeds. (*Id.* ¶¶ 38-39.) Specifically, Mr. Sharafabadi alleges:

> The Defendant PNW Coop has been actively and continuously involved in distribution, growing, producing, trading, selling, marketing, exporting the IdaGold yellow mustard seeds which in its development and making fall within one and more claims of the "186 Patent". During various stages of productions and processing of IdaGold yellow mustard seeds the Defendants Pacific Northwest Farmers Coop uses the "186 Patent" to produce [a] substantial amount of Pseudoplastic Yellow Mustard Gum for measuring its viscosity as a means to ensure the quality characteristics of the IdaGold yellow mustard seeds as well.

(*Id.* ¶ 39; *see also id.* ¶ 38 (pleading similar allegations regarding Genesee).) L.A. Hearne is a buyer and seller of seeds in King City, California. (*Id.* ¶ 40; Declaration of Tom Hearne (Dkt. # 25) ¶¶ 2, 4.) L.A. Hearne is a customer of PNW and has purchased

---

[1] In his complaint, Mr. Sharafabadi names both Pacific Northwest Farmers Coop (PNW Genesee) and Pacific Northwest Farmers Coop (PNW Colfax) as Defendants. In its motion, PNW explains that these Defendants are the same entity; PNW merely has offices in both Genesee, Idaho, and Colfax, Washington. (PNW Mot. at 1 n.1.) Mr. Sharafabadi does not dispute this characterization. Therefore, the court will treat both PNW Defendants as a single entity.

[2] Genesee is not named as a defendant.

ORDER- 3

IdaGold seeds from PNW. (Compl. ¶ 40; Hearne Decl. ¶ 3; Newbry Decl. ¶ 13.) With respect to L.A. Hearne, Mr. Sharafabadi alleges:

> The Defendant L.A. Hearne Company as an agent or sub-licensee of the Defendants PNW Coop and or Montana Specialty Mills, L.L.C. has been infringing the "186 Patent" by selling directly, by Phone . . . and by Internet . . . in the District of the Washington and throughout the United States the IdaGold mustard seeds which in its development employs one and more claims of the "186 Patent".

(Compl. ¶ 40.) The complaint provides no additional factual allegations concerning PNW and L.A. Hearne.

Mr. Sharafabadi alleges claims against PNW and L.A. Hearne for direct and indirect infringement of the '186 Patent.[3] (*Id*. ¶¶ 14-15, 17-20.) PNW and L.A. Hearne now move to dismiss Mr. Sharafabadi's patent infringement claims against them pursuant to Rule 12(b)(6). Mr. Sharafabadi opposes the motions.[4]

### III. ANALYSIS

**A. Motion to Dismiss Standard**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct.

---

[3] Mr. Sharafabadi does not cite to specific statutory provisions in his complaint. However, he labels his two claims "Direct Infringement of the '186 Patent'" and "Contributory and Induced Infringement of the '186 Patent,'" respectively. (Compl. ¶¶ 14-16 (direct) & ¶¶ 17-20 (indirect).)

[4] Mr. Sharafabadi failed to file his responses to the motion in a timely manner. Nevertheless, the court has considered Mr. Sharafabadi's responses. The court advises Mr. Sharafabadi, however, that in the future such late-filed briefing may not be considered.

1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not enough for a complaint to "plead[] facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court considering a motion to dismiss must accept all of the factual allegations in the complaint as true, the court is not required to accept as true a legal conclusion presented as a factual allegation. *Id.* at 1949-50.

Form 18 of the Federal Rules of Civil Procedure provides a sample complaint for direct patent infringement. *See also* Fed. R. Civ. P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."). The Federal Circuit and a range of district courts have concluded that the sample complaint of Form 18 meets the *Twombly* standard. *E.g., McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-58 (Fed. Cir. 2007); *Elan Microelecs. Corp. v. Apple, Inc.*, No. C09-01531 RS, 2009 WL 2972374, at *2 (N.D. Cal. Sept. 14, 2009); *Adv. Analogic Techs., Inc. v. Kinetic Techs., Inc.*, No. C09-1360 MMC, at *1 (N.D. Cal. July 8, 2009); *S.O.I.TEC Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, No. 08-292-SLR, 2009 WL 423989, at *2 (D. Del. Feb. 20, 2009). Pursuant to Form 18 a plaintiff alleging a direct infringement claim need only provide the following general information:

> 1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; 4) a

statement that the plaintiff has given the defendant notice of its
infringement; and 5) a demand for an injunction and damages.

*McZeal*, 501 F.3d at 1357; *see* Fed. R. Civ. P. Form 18.  In *McZeal*, the Federal Circuit determined that a complaint for direct patent infringement that includes these elements is sufficient to meet "the low bar for pro se litigants to avoid dismissal on the basis of Fed. R. Civ. P. 12(b)(6)."[5]  *Id*. at 1358.  By contrast, the Federal Rules of Civil Procedure do not provide an analogous form for indirect patent infringement claims.  *See Elan Microelecs*., 2009 WL 2972374, at *2.

**B.   Patent Infringement Claims Against PNW**

   1.   Direct Patent Infringement: 35 U.S.C. § 271(a)

To establish a claim for direct patent infringement, a plaintiff must show that the defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . ."  35 U.S.C. § 271(a).  "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, LP*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).  "For process patent or method patent claims, infringement occurs when a party performs all of the steps of the process."  *Id*.

PNW argues that Mr. Sharafabadi's direct patent infringement claims must be dismissed because he has pleaded only conclusory allegations that are insufficient to state

---

[5] The Federal Circuit decided *McZeal* after *Twombly* but before *Iqbal*.  This court agrees with the sentiment expressed by at least one other district court that it is difficult to reconcile Form 18 with the Supreme Court's guidance in those decisions.  *See Elan Microelecs*., 2009 WL 2972374, at *2.

a plausible claim under the *Iqbal-Twombly* standard. (PNW Mot. at 12-15.) PNW concedes that Mr. Sharafabadi's complaint includes some accurate facts (*id.* at 13), but asserts that the court should disregard Mr. Sharafabadi's key allegation:

> During various stages of productions and processing of IdaGold yellow mustard seeds the Defendants Pacific Northwest Farmers Coop uses the "186 Patent" to produce [a] substantial amount of Pseudoplastic Yellow Mustard Gum for measuring its viscosity as a means to ensure the quality characteristics of the IdaGold yellow mustard seeds as well.

(Compl. ¶ 39.) PNW argues that this allegation is a conclusory statement not entitled to the presumption of truth because it is unsupported by accompanying facts. (PNW Mot. at 13.)

The line between factual allegations and legal conclusions is not always clear, and Mr. Sharafabadi's allegations against PNW represent an example of such blurring. PNW correctly observes that Mr. Sharafabadi has not thoroughly developed his allegations. PNW also presents evidence to suggest that Mr. Sharafabadi's allegations may be incorrect. On a motion to dismiss, however, the court need only satisfy itself that the complaint surmounts "the low bar for pro se litigants to avoid dismissal," without consideration of contradictory evidence outside the four corners of the complaint. *McZeal*, 501 F.3d at 1358. Here, the court is satisfied that Mr. Sharafabadi has alleged a claim for direct patent infringement sufficient to survive a motion to dismiss. Mr. Sharafabadi has provided the information contemplated by Form 18 and has advised PNW of his allegation that PNW is using the '186 Patent in the course of its business as a quality control method. *Cf. id.* at 1357. Therefore, the court denies PNW's motion to dismiss Mr. Sharafabadi's direct patent infringement claim.

2. Indirect Patent Infringement: 35 U.S.C. §§ 271(b) and 271(c)

A claim of indirect patent infringement may be predicated on either infringement by inducement or contributory infringement. With respect to infringement by inducement, patent law provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part). Direct infringement is a prerequisite to an indirect inducement claim. *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) *C.R. Bard, Inc. v. Adv. Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) ("A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement."). If the patentee establishes direct infringement, then he or she must also prove two additional elements: the patentee must show that the alleged infringer committed an act that constitutes infringement, *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1156 (W.D. Wash. 2008), and that the alleged infringer intended to cause direct infringement, *DSU Med. Corp.*, 471 F.3d at 1305-06. "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp.*, 581 F.3d at 1328.

With respect to contributory infringement, a party is liable if he or she "offers to sell or sells within the United States or imports into the United States a component of a

patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). Direct infringement is also a prerequisite to a contributory infringement claim. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). "Beyond a showing of direct infringement, to prevail on a charge of contributory infringement, a patentee must prove two elements: (1) knowledge and (2) materiality." *Veritas Operating Corp.*, 562 F. Supp. 2d at 1157; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) ("[T]o succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have no substantial non-infringing uses." (internal quotations omitted)).

Here, Mr. Sharafabadi pleads no factual allegations sufficient to support an indirect infringement claim against PNW under either § 271(b) or § 271(c).[6] The complaint focuses on PNW's sale of the IdaGold seeds and PNW's alleged use of the '186 Patent to test the quality of the IdaGold seeds (Compl. ¶¶ 38-39), but does not

---

[6] In his complaint, Mr. Sharafabadi describes the actions of the University of Idaho, as well as the actions of Oregon State University and Washington State University, that he believes constitute indirect patent infringement. (*E.g.*, Compl. ¶¶ 48, 51.) He simply makes no similar allegations regarding PNW.

allege, for instance, any facts concerning either how PNW induced or contributed to another party's direct infringement of the '186 Patent or PNW's knowledge. The allegations in the complaint, even taken as true, are insufficient to state a claim for indirect infringement.[7] Without more, Mr. Sharafabadi has not alleged sufficient facts regarding a plausible claim of indirect patent infringement against PNW. The court therefore dismisses the indirect infringement claims pleaded against PNW.

In his response, Mr. Sharafabadi presents new arguments regarding PNW's alleged indirect infringement. (Resp. to PNW (Dkt. # 56) at 5.) Specifically, Mr. Sharafabadi contends that PNW indirectly infringed the '186 Patent by providing samples of its commercial IdaGold seeds to the University of Idaho for performance tests of the seeds using the '186 Patent. (*Id.*) The factual allegations underlying these arguments do not appear in his complaint. Because Mr. Sharafabadi did not include these factual allegations in his complaint, the court declines to consider them in evaluating the complaint for purposes of PNW's motion to dismiss.

---

[7] In making this determination, the court is mindful that Form 18 only addresses direct infringement, not indirect infringement. Fed. R. Civ. P. Form 18; *see Elan Microelecs.*, 2009 WL 2972374, at *2. As one district court explains:

> Both types of indirect infringement include additional elements, none of which Form 18 even purports to address. In the absence of any other form that addresses indirect infringement and is made binding on the courts through Rule 84, the Court must apply the teachings of *Twombly* and *Iqbal*.

*Id.*
ORDER- 10

### 3. 35 U.S.C. § 271(g)

Patent law provides that whoever "offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer . . . ." 35 U.S.C. § 271(g). With respect to the question of whether a product is "made by a process patented in the United States," the Federal Circuit explains that the patented process "must be used directly in the manufacture of the product, and not merely as a predicate process to identify the product to be manufactured." *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1378 (Fed. Cir. 2003). For example, "[a] drug product, the characteristics of which were studied using the claimed research processes . . . is not a product 'made by' those claimed processes." *Id*. at 1377.

Here, Mr. Sharafabadi alleges that the University of Idaho used the '186 Patent as a means to research the mucilage content of mustard seeds in the course of developing the IdaGold seeds. (*E.g.*, Compl. ¶ 28.) He characterizes the University of Idaho as using the '186 Patent "as a Research Tool and Research Material in making, producing and development of the IdaGold and other new advanced breeding lines and cultivars of yellow mustard seeds." (*Id*.) Although Mr. Sharafabadi "claims sole proprietary rights to the IdaGold," he does not allege that the Universities or any other entities directly used the '186 Patent to actually produce the IdaGold seeds; rather, he alleges only that the Universities used the '186 Patent as a research tool to test the characteristics of various yellow mustard seeds. These factual allegations, even accepted as true, are insufficient to make out a § 271(g) claim. Mr. Sharafabadi does not allege that PNW or any other defendant used the '186 Patent to directly manufacture or produce the IdaGold seeds.

ORDER- 11

*Bayer AG*, 340 F.3d at 1378. Likewise, he does not allege that PNW sells pseudoplastic yellow mustard gum. Mr. Sharafabadi disputes the applicability of *Bayer AG* to the facts of his case, but does not show how or why the court should follow a different approach. (Resp. to PNW at 8.) Therefore, to the extent Mr. Sharafabadi alleges a § 271(g) claim against PNW, the court dismisses the claim.

**C.   Patent Infringement Claims Against L.A. Hearne**

In his complaint, Mr. Sharafabadi pleaded only that L.A. Hearne is an agent or sub-licensee of PNW or Defendant Montana Specialty Mills, LLC, and that it sells the IdaGold mustard seeds. (Compl. ¶ 40.) Mr. Sharafabadi does not allege that L.A. Hearne used or uses the '186 Patent. Even accepting the allegations in the complaint as true, Mr. Sharafabadi has not made out a claim for direct infringement. Likewise, the factual allegations contained in the complaint are insufficient to make out a claim under §§ 271(b), 271(c), or 271(g), for the reasons discussed above. Therefore, the court dismisses all of Mr. Sharafabadi's claims against L.A. Hearne.

**D.   Available Remedies**

PNW argues that the court should dismiss Mr. Sharafabadi's claims against it because neither damages nor injunctive relief are available as a remedy on the facts of this case. (PNW Mot. at 19-21.)

1.   <u>Damages</u>

Pursuant to 35 U.S.C. § 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . for infringement in the action . . . ." PNW argues that under § 286 Mr. Sharafabadi cannot recover damages

for any infringement claim because the alleged infringement ended in 2002. (PNW Mot. at 19-20.) PNW's argument presupposes that the court disregard Mr. Sharafabadi's allegation that PNW uses the '186 Patent in the course of its business to test the quality of the IdaGold seeds. (*Id*. at 20.) As discussed above, the court declines to do so. Further, although Mr. Sharafabadi does not include specific dates in relation to his direct patent infringement claims against PNW, the court is satisfied that these claims plausibly fall within the 6-year period contemplated by § 286.

2. <u>Injunctive Relief</u>

Pursuant to 35 U.S.C. § 283, a patent holder may seek injunctive relief "to prevent the violation of any right secured by patent." However, "when the rights secured by a patent are no longer protectable by virtue of expiration or unenforceability, entitlement to injunctive relief becomes moot because such relief is no longer available." *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994). Here, Mr. Sharafabadi and PNW agree that the '186 Patent expired in August 2009. (PNW Mot. at 20; Resp. to PNW at 9 ("The '186 Patent' is valid and expired.").) This precludes Mr. Sharafabadi from obtaining injunctive relief under § 283. *Id*. Therefore, the court dismisses Mr. Sharafabadi's request for injunctive relief.[8]

**E. Requests for Attorney's Fees**

At this time, the court denies without prejudice PNW's and L.A. Hearne's requests for attorney's fees. (PNW Mot. at 21-22; L.A. Hearne Mot. at 17.)

---

[8] The court notes that alternative forms of equitable relief may be available. *See, e.g., Astrazeneca AB v. Impax Labs., Inc.*, 490 F. Supp. 2d 368, 374-76 (S.D.N.Y. 2007).

ORDER- 13

## IV. CONCLUSION

For the foregoing reasons, pursuant to Rule 12(b)(6), the court GRANTS in part and DENIES in part PNW's motion to dismiss (Dkt. # 14) and GRANTS L.A. Hearne's motion to dismiss (Dkt. # 24). The court grants Mr. Sharafabadi leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Mr. Sharafabadi may file an amended complaint within 20 days of this order.

Dated this 27th day of November, 2009.

/s/ James L. Robart

JAMES L. ROBART
United States District Judge

ORDER- 14