UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOHEIL K. SHARAFABADI,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC NORTHWEST FARMERS COOPERATIVE, INC., et al.,<br><br>Defendants. | CASE NO. C09-1043JLR<br><br>ORDER ON PACIFIC NORTHWEST FARMERS COOPERATIVE, INC.'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the court on Defendant Pacific Northwest Farmers Cooperative, Inc.'s ("PNW") motion for summary judgment of non-infringement (Dkt. # 75). PNW moves the court for judgment as a matter of law that it did not directly infringe U.S. Patent 4,980,186 ("the '186 Patent"). Having considered the motion, as well as all papers filed in support and opposition, and deeming oral argument unnecessary, the court GRANTS the motion (Dkt. # 75).

## II. BACKGROUND

This is a patent infringement action concerning the '186 Patent, which is titled "Pseudoplastic Yellow Mustard Gum." (Compl. (Dkt. # 1) ¶ 13 & Ex. 1 ('186 Patent).) Plaintiff Soheil K. Sharafabadi, a Canadian citizen proceeding *pro se*, is listed as the inventor and owner of the '186 Patent. (*Id.* ¶ 1.) The patent abstract describes the '186 Patent as "[a]n improved process of gum extraction from whole yellow mustard seed . . . ." (*Id.*, Ex. 1.) The '186 Patent involves a process of extracting gum from mustard seeds by treating them in hot water. (*Id.*) The parties are familiar with the factual background of this case, and the court will not repeat it here in full.

### A. Allegations in the Complaint

In his complaint, Mr. Sharafabadi alleges that the University of Idaho began using the '186 Patent in the course of its breeding program for advanced yellow mustard seed lines and cultivars. (*Id.* ¶ 23.) The program resulted in the development of the IdaGold yellow mustard seed. (*Id.*) With respect to PNW, Mr. Sharafabadi alleges that Genesee Union Warehouse Cooperative ("Genesee")[1] and PNW, its successor-in-interest, in connection with the University of Idaho, directly infringed the '186 Patent by using the patent to produce mustard gum in the course of their business.[2] (*Id.* ¶¶ 38-39.) Specifically, Mr. Sharafabadi alleges:

---

[1] Genesee is not named as a defendant.

[2] Mr. Sharafabadi also pleaded other claims against PNW. These claims have been dismissed and the court will not discuss them here.

> The Defendant PNW Coop has been actively and continuously involved in distribution, growing, producing, trading, selling, marketing, exporting the IdaGold yellow mustard seeds which in its development and making fall within one and more claims of the "186 Patent". During various stages of productions and processing of IdaGold yellow mustard seeds the Defendants Pacific Northwest Farmers Coop uses the "186 Patent" to produce substantial amount of Pseudoplastic Yellow Mustard Gum for measuring its viscosity as a means to ensure the quality characteristics of the IdaGold yellow mustard seeds as well.

(*Id.* ¶ 39; *see also id.* ¶ 38 (pleading similar allegations regarding Genesee).)

**B.  Pacific Northwest Farmers Cooperative**

PNW is an Idaho non-profit agricultural cooperative.[3] (Declaration of Bill Newbry ("Newbry Decl.") (Dkt. # 76) ¶ 1.) On July 11, 2003, Genesee entered into a non-exclusive license to produce and distribute IdaGold mustard seeds with the Idaho Research Foundation ("IRF"). (*Id.* ¶ 3 & Ex. A.) Pursuant to the licensing agreement, PNW obtains foundation seed from the University of Idaho for the purpose of growing certified seed for resale. (*Id.* ¶ 3.) In 2008, the parties amended the licensing agreement to replace IRF with the University of Idaho as the licensing party. (*Id.*) PNW pays royalties to the University of Idaho on sales of IdaGold seeds grown from foundation seeds. (*Id.* ¶ 4.) The licensing agreement does not address or refer to any processes or procedures for the alteration of mustard seeds. (*Id.* ¶ 4 & Ex. A.)

After obtaining foundation seed, PNW contracts with growers to plant the seed, which results in certified planting seed. (*Id.* ¶ 5.) State associations inspect the seed

---

[3] In his complaint, Mr. Sharafabadi names both "Pacific Northwest Farmers Coop (PNW Genesee)" and "Pacific Northwest Farmers Coop (PNW Colfax)" as Defendants. The court will treat both Defendants as a single entity.

ORDER- 3

fields for purity before harvest. (*Id.*) "The inspection process does not require any water extraction or any other complicated chemical process." (*Id.*) Rather, the inspection process merely involves reviewing the mustard crops to ensure that there are no noxious weeds or other plants intermixing with the mustard plants. (*Id.*) After harvest, PNW sends samples of the seeds to outside laboratories for testing to determine the germination rate. (*Id.* ¶ 6.) If a batch meets the purity standards and germination target, then PNW sells the certified seed as planting seed; however, if the batch does not meet the minimum requirements, then PNW downgrades the seed to commercial seed and sells it to mustard processors. (*Id.*)

Bill Newbry, PNW's president, states that PNW has not used and does not use the '186 Patent in the course of its business. (*Id.* ¶ 10.) Specifically, he declares:

> PNW's entire business is in the purchase, growth, and sale of seeds, of which mustard seeds is a big part of our business. PNW grows UI's Foundation Seed to produce additional mustard seed that is either sold as Certified Seed to farmers for propagation of Commercial Seed or for Bio-Fumigation Purposes or as Commercial Seed to middlemen, who ultimately sell the Commercial Seed to manufacturers. PNW has never operated a laboratory or engaged in any chemical processes for the alteration of mustard seeds, or the extraction of mustard gum. PNW has not separated the mustard seeds from hulls. PNW has not extracted any water or other substance from mustard seeds. Further, PNW does not and has not treated mustard seeds in hot water, let alone scalding or boiling water. PNW has never engaged in research or development of mustard seed cultivars, and is not equipped with the facilities, expertise or training to do so. And PNW has never used the '186 Patent for any purpose; indeed, it has no need to do so because it is only in the business of selling mustard seeds. It has never produced the patented chemical composition.

(*Id.*) Similarly, Kyle Renton, PNW's seed and agronomy manager, states that PNW has not and does not use the '186 Patent:

> I have read the 20 claims contained in the patent in suit 4,980,186. Up until this lawsuit, neither I, and to the best of my knowledge no one else at PNW, had ever heard of Sharafabadi, his patent, or of mucilage content or how it relates to the production of mustard seed gum. We don't sell or use yellow mustard seed gum, nor have we ever. The only purposes for which PNW has sold Certified Seed is for seed stock of commercial fields or for Bio-Fumigation (also called cover crops or "green manure"). The Commercial Seeds we sell are used strictly for the purpose of making confectionary mustard. We do not know what the purpose is of making yellow mustard gum or what the industrial uses of that chemical composition would be.
>
> For further clarification, PNW has not made, sold, used, or offered the sale of the water extraction of gum from mustard. Nor have we sold the gum that has been extracted from this process. PNW has not separated the mustard seeds from hulls. PNW has not extracted any water or other substance from mustard seeds. And PNW does not and has not treated mustard seeds in hot water, let alone scalding or boiling water or temperature. Like mentioned in the previous paragraph, we are not sure of how the process works, the purpose of the process and how that process is applied for industrial purposes. Nor do we know what purpose the gum has.

(Declaration of Kyle Renton ("Renton Decl.") (Dkt. # 77) ¶¶ 4-5.)

**C.    Procedural History**

On November 27, 2009, the court dismissed Mr. Sharafabadi's indirect and contributory infringement claims against PNW. (Dkt. # 72.) The court reasoned that Mr. Sharafabadi had made out a claim for direct patent infringement sufficient to survive a motion to dismiss, but that he had failed to plead sufficient factual allegations to make out plausible claims for indirect and contributory patent infringement. In dismissing Mr. Sharafabadi's claims for indirect and contributory patent infringement, the court granted Mr. Sharafabadi leave to amend his complaint within 20 days. Mr. Sharafabadi did not file an amended complaint within the 20-day window, nor has he subsequently filed a

motion for leave to amend at a later date. Mr. Sharafabadi appealed the court's order of dismissal (Dkt. # 86), and the Ninth Circuit dismissed the appeal (Dkt. # 111).

PNW now moves for summary judgment on Mr. Sharafabadi's direct infringement claim.

### III. ANALYSIS

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The non-moving party "must present affirmative evidence to make this showing." *Id*. Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of material fact exist are insufficient," and a mere scintilla of evidence supporting a party's position is also inadequate. *Id*.

**A. Preliminary Matter**

PNW's motion for summary judgment comes before the court prior to a claim construction hearing with respect to the '186 Patent. In general, the court does not

consider motions for summary judgment prior to claim construction in patent cases. Nevertheless, the court deems it appropriate to consider the instant motion prior to claim construction because the arguments made in support of the motion rest on the foundation that PNW has not engaged in any act that implicates the '186 Patent, regardless of whether the patent is construed broadly or narrowly. The court therefore finds it appropriate to consider the motion prior to claim construction.

**B.      Direct Patent Infringement**

To establish a claim for direct patent infringement, a plaintiff must show that the defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a). "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, LP*, 498 F.3d 1373, 1378 (Fed. Cir. 2007). "For process patent or method claims, infringement occurs when a party performs all of the steps of the process." *Id*.

Without construing the claims, it is clear that 3 of the 20 claims of the '186 Patent claims are independent claims (Claims 1, 16, and 19) and the remaining 17 claims are dependent claims. Mr. Sharafabadi alleges infringement of Claim 1, Claim 2, and Claim 19. (Compl. ¶¶ 22-23.) In general terms, Claim 1 describes a process involving dried yellow mustard seed and hot water. Specifically, Claim 1 and Claim 2 provide:

> 1. In a process of water extraction of gum from dried yellow mustard seed, including the steps of
>
>    (a) treating said mustard seed with water
>    (b) separating the resulting water extract from said seed, the improvement comprising
>    (c) said water being at a temperature in the range from about 55° C. to about 100° C.
>
> 2. The process of claim 1, wherein the said temperature is 100° C.

(Compl., Ex. 1.) Claim 19 describes a type of mustard seed gum. Specifically, Claim 19 provides:

> 19. A yellow mustard seed gum, having pseudoplastic properties in aqueous solution, wherein said gum includes a polysaccharide, having monosaccharide components comprising in order of decreasing concentration glucose, galactose, mannose, arabinose, with rhamnose and xylose approximately equal in concentration but less than arabinose.

(*Id.*) The parties do not dispute the basic scope of these claims.

First, the court finds that PNW has met its initial burden by presenting evidence to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In their declarations, Mr. Newbry and Mr. Renton, who are directly involved in PNW's activities, state that PNW does not use and has never used the '186 Patent or any process like it in the course of PNW's business. Mr. Newbry and Mr. Renton explain in detail PNW's business practices and procedures regarding the IdaGold seeds, which they declare do not involve or implicate the '186 Patent in any manner. As to the allegation of direct infringement, Mr. Newbry and Mr. Renton state that PNW has not engaged and does not engage in any process similar to Claim 1 or Claim 2. (Newbry Decl. ¶ 10; Renton Decl. ¶ 5.) Similarly, Mr. Newbry and Mr. Renton state that PNW

has not extracted, used, or sold any type of mustard seed gum. (Newbry Decl. ¶ 10; Renton Decl. ¶¶ 4-5.) This evidence is sufficient to satisfy PNW's initial burden because it tends to show that PNW did not engage in any acts that constitute direct infringement of the '186 Patent.

Second, the court finds that Mr. Sharafabadi has not come forward with or otherwise identified evidence sufficient to withstand summary judgment as to his direct infringement claim against PNW. As the court has determined that PNW has presented sufficient evidence to meet its initial burden on summary judgment, the burden shifts to Mr. Sharafabadi to present affirmative evidence to make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his direct infringement claim. *Galen*, 477 F.3d at 658. In opposition to summary judgment, Mr. Sharafabadi relies principally on allegations in his complaint, the declarations of Mr. Newbry and Mr. Renton, four documents attached as a single exhibit to his response, and a range of unsupported assertions in his briefing. Even viewed in the light most favorable to Mr. Sharafabadi, these allegations and evidence are not sufficient to establish a genuine issue of material fact as to Mr. Sharafabadi's direct patent infringement claim.

Mr. Sharafabadi does not point to any evidence in support of his assertion that PNW directly "used the 'devices' of the '186 Patent' to make IdaGold seeds." (Resp. (Dkt. # 96) at 8.) The court notes that it is not entirely clear whether Mr. Sharafabadi contends PNW itself—as opposed to the University of Idaho or another party— performed any part of the process of the '186 Patent or produced or used mustard seed gum. Nevertheless, to the extent Mr. Sharafabadi makes such an argument, he has

presented no evidence to give rise to a genuine dispute of material fact regarding whether PNW itself directly infringed the '186 Patent. The bald assertions and blanket contradictions scattered throughout Mr. Sharafabadi's briefing are insufficient to withstand summary judgment.

The primary thrust of Mr. Sharafabadi's opposition focuses on the relationship between PNW and the University of Idaho. He characterizes this relationship as that of master (PNW) and servant (University of Idaho). (*Id*. at 3, 9.) The court notes that Mr. Sharafabadi's argument is again not entirely clear. He contends that PNW "is under [the] 'mistaken' proposition that its involvement with the [University of Idaho] started at the time of signing the IdaGold's Licensing Agreement in 2003," and that this mistake undermines the arguments made by PNW in support of summary judgment. (*Id*. at 9.) Mr. Sharafabadi alleges that the declarations of Mr. Newbry and Mr. Renton demonstrate that "PNW was involved directly with the [University of Idaho] in the making of IdaGold since 1992." (*Id*.) He further asserts as follows:

> "PNW" is under [the] mistaken proposition that a developmental project requires in-house laboratories. During the last two decades numerous companies have shifted their developmental projects overseas to avoid the patent infringement's lawsuits in US. Likewise the "PNW" shifted its seed development projects to outside laboratories and employed the service of the [University of Idaho] and paid for the services in cash and kind by growing and providing seeds of IdaGold to the [University of Idaho].

(*Id*.) Although Mr. Sharafabadi points to the declarations of Mr. Newbry and Mr. Renton to support his contentions, the declarations themselves, even viewed in the light most favorable to Mr. Sharafabadi, do not demonstrate a genuine dispute of material fact regarding the existence of a master-servant relationship or otherwise suggest that PNW

can be held liable for the University of Idaho's actions. At most, the declarations of Mr. Newbry and Mr. Renton confirm the existence of a business relationship between PNW and the University of Idaho. They do not, however, show that PNW engaged in seed development projects involving the '186 Patent or that it shifted such projects to the University of Idaho. Without more, these declarations, Mr. Sharafabadi's bald assertions, and the allegations of the complaint are insufficient to establish a genuine issue of material fact regarding whether PNW committed direct patent infringement.

Mr. Sharafabadi also argues that PNW's motion for summary judgment is moot. (*Id*. at 6.) In support of this assertion, Mr. Sharafabadi cites Wisconsin case law regarding the summary judgment standard and the doctrine of mootness. (*Id*. at 6-7.) The court rejects Mr. Sharafabadi's argument that the instant motion is moot. This argument relies on a misunderstanding of the doctrine of mootness, which is inapplicable here.

Mr. Sharafabadi also devotes a significant portion of his briefing to addressing issues that have already been considered and ruled on by the court. At this time, the court declines to revisit or reconsider these issues, including, *inter alia*, the question of sovereign immunity and Mr. Sharafabadi's claims against PNW under 35 U.S.C. §§ 271(b), (c), and (g), which were previously dismissed.

In sum, Mr. Sharafabadi has not carried his burden of showing a genuine dispute of material fact as to his direct infringement claim against PNW. Viewing the evidence in the light most favorable to Mr. Sharafabadi, the court concludes that summary judgment in favor of PNW is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS PNW's motion for summary judgment (Dkt. # 75).

Dated this 22nd day of February, 2010.

*(signature)*

JAMES L. ROBART
United States District Judge