UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOHEIL K. SHARAFABADI,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC NORTHWEST FARMERS COOPERATIVE, INC., et al.,<br><br>Defendants. | CASE NO. C09-1043JLR<br><br>ORDER ON MONTANA SPECIALTY MILLS LLC'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the court on Defendant Montana Specialty Mills LLC's ("MSM") motion for summary judgment of non-infringement (Dkt. # 92). MSM moves the court for judgment as a matter of law that it did not infringe U.S. Patent 4,980,186 ("the '186 Patent"). Having considered the motion, as well as all papers filed in support and opposition, and deeming oral argument unnecessary, the court GRANTS the motion (Dkt. # 92).

ORDER- 1

## II. BACKGROUND

This is a patent infringement action concerning the '186 Patent, which is titled "Pseudoplastic Yellow Mustard Gum." (Compl. (Dkt. # 1) ¶ 13 & Ex. 1 ('186 Patent).) Plaintiff Soheil K. Sharafabadi, a Canadian citizen proceeding *pro se*, is listed as the inventor and owner of the '186 Patent. (*Id*. ¶ 1.) The patent abstract describes the '186 Patent as "[a]n improved process of gum extraction from whole yellow mustard seed . . . ." (*Id*., Ex. 1.) The '186 Patent involves a process of extracting gum from mustard seeds by treating them in hot water. (*Id*.) The parties are familiar with the factual background of this case, and the court will not repeat it here in full.

### A. Allegations in the Complaint

In his complaint, Mr. Sharafabadi alleges that the University of Idaho began using the '186 Patent in the course of its breeding program for advanced yellow mustard seed lines and cultivars. (*Id*. ¶ 23.) The program resulted in the development of the IdaGold yellow mustard seed. (*Id*.) With respect to MSM, Mr. Sharafabadi alleges that MSM directly and indirectly infringed the '186 Patent. Specifically, Mr. Sharafabadi alleges:

> The Defendant University of Idaho has licensed the IdaGold seeds, the Plaintiff's properties to the Defendant Montana Specialty Mills, L.L.C. The Defendant – Montana Specialty Mills distributes the IdaGold seeds to its network of contract growers and buys back the commercial grades of IdaGold yellow mustard seeds, processes, sells and trades the IdaGold mustard seeds locally, and throughout the United States, and in this district and exports it in the International market by internet at http://www.mtspecialtymills.com. During various stages of productions and processing of IdaGold yellow mustard seeds the Defendant Montana Specialty Mills, L.L.C. uses the "186 Patent" to produce substantial amount of Pseudoplastic Yellow Mustard Gum (mucilage) for measuring its viscosity as a means to ensure the quality characteristics of the IdaGold

yellow mustard seeds and products made by IdaGold yellow mustard seeds and infringes the Plaintiff's "186 Patent".

(*Id*. ¶ 37.)

B.     **Montana Specialty Mills LLC**

MSM is a Montana-based company that, as part of its business, "engages in the cleaning and grinding of whole mustard seed which is sold to condiment manufacturers and spice blenders." (Declaration of Steve Chambers ("Chambers Decl.") (Dkt. # 93) ¶ 1.) Steve Chambers, MSM's president, explains that on October 21, 2003, MSM entered into a non-exclusive licensing agreement regarding IdaGold mustard seeds with the Idaho Research Foundation ("IRF"). (*Id*. ¶ 3; License Agreement (Dkt. # 92-2).) Under the licensing agreement, MSM purchases foundation seed from the University of Idaho and increases that seed to certified seed. (Chambers Decl. ¶ 3.) Once the certified seed is cleaned and approved for foundation, MSM sells the seed to farmers for planting as commercial crop. (*Id*.) MSM pays royalties to the University of Idaho. (*Id*.)

Mr. Chambers states that MSM has never used the '186 Patent for any purpose. (*Id*. ¶ 7; *see also id.* ¶ 9.) He declares that MSM had no knowledge of the '186 Patent prior to July 2009 when Mr. Sharafabadi emailed MSM. (*Id*. ¶ 6.) In addition, Mr. Chambers states that MSM is a primary processor of mustard seed, that MSM does not operate either a plant breeding program or a "lab that engages in any chemical processes to alter mustard seeds," and that MSM "also does not extract mustard seed gums, nor does it have the staff, facility, expertise or resources to do so." (*Id*. ¶ 9.) He also states that MSM "does not do anything that pertains to, uses or sells mustard seed gum," and

states that MSM "has never taught, trained or advised any party" on the process taught by the '186 Patent. (*Id*. ¶ 11.)

### III. ANALYSIS

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The non-moving party "must present affirmative evidence to make this showing." *Id*. Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of material fact exist are insufficient," and a mere scintilla of evidence supporting a party's position is also inadequate. *Id*.

**A. Preliminary Matter**

MSM's motion for summary judgment comes before the court prior to a claim construction hearing with respect to the '186 Patent. In general, the court does not consider motions for summary judgment prior to claim construction in patent cases. Nevertheless, the court deems it appropriate to consider the instant motion prior to claim

construction because the arguments made in support of the motion rest on the foundation that MSM has not engaged in any act that implicates the '186 Patent, regardless of whether the patent is construed broadly or narrowly. The court therefore finds it appropriate to consider the motion prior to claim construction.

**B.    Direct Patent Infringement**

To establish a claim for direct patent infringement, a plaintiff must show that the defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a). "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, LP*, 498 F.3d 1373, 1378 (Fed. Cir. 2007). "For process patent or method claims, infringement occurs when a party performs all of the steps of the process." *Id*.

Without construing the claims, it is clear that 3 of the 20 claims of the '186 Patent claims are independent claims (Claims 1, 16, and 19) and the remaining 17 claims are dependent claims. Mr. Sharafabadi alleges infringement of Claim 1, Claim 2, and Claim 19. (Compl. ¶¶ 22-23.) In general terms, Claim 1 and Claim 2 describe a process involving dried yellow mustard seed and hot water. Specifically, Claim 1 and Claim 2 provide:

> 1. In a process of water extraction of gum from dried yellow mustard seed, including the steps of
>
>    (a) treating said mustard seed with water

> (b) separating the resulting water extract from said seed, the improvement comprising
> (c) said water being at a temperature in the range from about 55° C. to about 100° C.
>
> 2. The process of claim 1, wherein the said temperature is 100° C.

(Compl., Ex. 1.) Claim 19 describes a type of mustard seed gum. Specifically, Claim 19 provides:

> 19. A yellow mustard seed gum, having pseudoplastic properties in aqueous solution, wherein said gum includes a polysaccharide, having monosaccharide components comprising in order of decreasing concentration glucose, galactose, mannose, arabinose, with rhamnose and xylose approximately equal in concentration but less than arabinose.

(*Id.*) The parties do not dispute the basic scope of these claims.

First, the court finds that MSM has met its initial burden by presenting evidence to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In his declaration, Mr. Chambers states that MSM "has never used the '186 patent process for any purpose and it has no reason to do so in its business." (Chambers Decl. ¶ 7.) As to Claim 1 and Claim 2, Mr. Chambers states that MSM has not engaged and does not engage in any similar process, is unaware of any other party using a similar process, and has never taught, trained, or advised any party as to a similar process. (*Id.* ¶¶ 7-8.) As to Claim 19, Mr. Chambers explains that MSM "does not do anything that pertains to, uses or sells mustard seed gum." (*Id.* ¶ 9.) This evidence is sufficient to satisfy MSM's initial burden because it tends to show that MSM did not engage in any acts that constitute direct infringement of the '186 Patent.

Second, the court finds that Mr. Sharafabadi has not come forward with or otherwise identified evidence sufficient to withstand summary judgment as to his direct infringement claim against MSM. As the court has determined that MSM has presented sufficient evidence to meet its initial burden on summary judgment, the burden shifts to Mr. Sharafabadi to present affirmative evidence to make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his direct infringement claim. *Galen*, 477 F.3d at 658. In opposition to summary judgment, Mr. Sharafabadi relies principally on allegations in his complaint, the declaration of Mr. Chambers, the declarations of Bill Newbry (Dkt. ## 15, 76) and Kyle Renton (Dkt. ## 16, 77)[1], miscellaneous documents attached to his response, and a range of unsupported assertions in his briefing. Even viewed in the light most favorable to Mr. Sharafabadi, these allegations and evidence are not sufficient to establish a genuine issue of material fact as to Mr. Sharafabadi's direct patent infringement claim.

Mr. Sharafabadi argues that "MSM provided IdaGold seeds and paid to IRF Inc and [the University of Idaho] as outside commercial lab, and thereby directly infringed the '186 Patent' under 35 U.S.C. 271(a)." (Resp. (Dkt. # 101) at 10.) He explains as follows:

> To ensure IdaGold's quality characteristics and specifications Article-II of the Licensing Agreement requires constant monitoring and verifications of IdaGold seeds and IRF Inc. and [the University of Idaho] act as outside commercial lab and MSM should provide samples and open its fields and

---

[1] The declarations of Mr. Newbry and Mr. Renton were submitted by Defendant Pacific Northwest Farmers Cooperative, Inc. in support of its motion to dismiss and motion for summary judgment, respectively. These declarations do not directly concern MSM.

> facilities for inspections by IRF Inc. in developing IdaGolld [sic]. To ensure specifications the IRF Inc., [the University of Idaho] uses the devices of the "186 Patent" and manufactures the pseudoplastic yellow mustard gum and infringes the "1896 Patent" [sic]. Manufacturing of pseudoplastic yellow mustard gum is prerequisite to test of the gum. Viscosity and chemical tests of the gum is performed by the non-patented methods.

(*Id.*) The court notes that it is not entirely clear whether Mr. Sharafabadi contends MSM itself—as opposed to IRF, the University of Idaho, or another party—performed any part of the process of the '186 Patent or produced or used mustard seed gum. Mr. Sharafabadi correctly notes that the licensing agreement provides for inspection of the certified seed fields to assure purity, trueness to type, and other genetic requirements for the IdaGold. (License Agreement at 3.) This does not, however, give rise to a genuine dispute of material fact regarding whether MSM itself uses or used the '186 Patent within the scope of a direct infringement claim. The bald assertions and blanket contradictions scattered throughout Mr. Sharafabadi's briefing are insufficient to withstand summary judgment.

Mr. Sharafabadi also suggests that MSM is or was a partner with IRF in developing the IdaGold, and that IRF used the '186 Patent in the course of developing the IdaGold and in monitoring or testing mustard seed. (Resp. at 10.) Mr. Sharafabadi points to no affirmative evidence to support his assertion of the existence of a partnership relationship between MSM and IRF as to the development of the IdaGold or to otherwise suggest that MSM can be held liable for IRF's alleged actions. Likewise, Mr. Sharafabadi has not presented affirmative evidence showing that MSM used either IRF or the University of Idaho as an outside laboratory involving the '186 Patent. Without

more, Mr. Sharafabadi has not established a genuine issue of material fact regarding whether MSM committed direct patent infringement.

Mr. Sharafabadi also argues that MSM's motion for summary judgment is moot. (*Id.* at 1, 6.) In support of this assertion, Mr. Sharafabadi cites Wisconsin case law regarding the summary judgment standard and the doctrine of mootness. (*Id.* at 4-5.) The court rejects Mr. Sharafabadi's argument that the instant motion is moot. This argument relies on a misunderstanding of the doctrine of mootness, which is inapplicable here.

Mr. Sharafabadi also points to an Internet printout from the website of Minn-Dak Growers Limited ("Minn-Dak"), which he characterizes as a competitor of MSM. (*Id.* at 11.) However, Mr. Sharafabadi fails to explain how the actions of Minn-Dak have any bearing on MSM's actions with respect to this case. This is insufficient to withstand summary judgment.

Mr. Sharafabadi also devotes a significant portion of his briefing to addressing issues that have already been considered and ruled on by the court. At this time, the court declines to revisit or reconsider its prior orders.

In sum, Mr. Sharafabadi has not carried his burden of showing a genuine dispute of material fact as to his direct infringement claim against MSM. Viewing the evidence in the light most favorable to Mr. Sharafabadi, the court concludes that summary judgment in favor of MSM is appropriate as to this claim.

## C. Indirect Patent Infringement

A claim of indirect patent infringement may be predicated on either infringement by inducement or contributory infringement. With respect to infringement by inducement, patent law provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part). Direct infringement is a prerequisite to an indirect inducement claim. *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) *C.R. Bard, Inc. v. Adv. Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) ("A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement."). If the patentee establishes direct infringement, then he or she must also prove two additional elements: the patentee must show that the alleged infringer committed an act that constitutes infringement, *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1156 (W.D. Wash. 2008), and that the alleged infringer intended to cause direct infringement, *DSU Med. Corp.*, 471 F.3d at 1305-06. "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp.*, 581 F.3d at 1328. Further, "[t]he requirement that the alleged infringer knew or should have known his actions would induce actual

infringement necessarily includes the requirement that he or she knew of the patent." *DSU Med. Corp.*, 471 F.3d at 1304.

With respect to contributory infringement, a party is liable if he or she "offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). Direct infringement is also a prerequisite to a contributory infringement claim. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). "Beyond a showing of direct infringement, to prevail on a charge of contributory infringement, a patentee must prove two elements: (1) knowledge and (2) materiality." *Veritas Operating Corp.*, 562 F. Supp. 2d at 1157; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) ("[T]o succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." (internal quotations omitted)).

Here, Mr. Sharafabadi pleads no factual allegations sufficient to support an indirect infringement claim against MSM under either § 271(b) or § 271(c).[2] The complaint focuses on MSM's sale of the IdaGold seeds and MSM's alleged use of the '186 Patent for measuring the viscosity of the IdaGold seeds to ensure its quality characteristics (Compl. ¶ 37), but does not allege, for instance, any facts concerning either how MSM induced or contributed to another party's direct infringement of the '186 Patent or MSM's knowledge. The allegations in the complaint, even taken as true, are insufficient to state a plausible claim for indirect infringement.

On the instant motion for summary judgment, the court will also look beyond the pleadings. *Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1447 (9th Cir. 1997). The court finds that MSM has met its initial burden by presenting evidence to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Mr. Chambers states that MSM first learned of the '186 Patent in July 2009 after receiving emails from Mr. Sharafabadi, and that previously "MSM had no knowledge of the patent, its processes, its utility, or any other thing related to yellow mustard seed gums and its extraction." (Chambers Decl. ¶ 6.) He further declares that "MSM is unaware of any person or party purchasing MSM yellow mustard seed having used the '186 patented process to produce the patented chemical

---

[2] In his complaint, Mr. Sharafabadi describes the actions of the University of Idaho, as well as the actions of Oregon State University and Washington State University, that he believes constitute indirect patent infringement. (*E.g.*, Compl. ¶¶ 48, 51.) He makes no similar allegations regarding MSM.

ORDER- 12

composition," and that "MSM has also never taught, trained, or advised any party on the process or any other method to do so." (*Id.* ¶ 8.) This evidence is sufficient to satisfy MSM's initial burden because it tends to show that MSM did not engage in any acts that constitute indirect infringement of the '186 Patent.

The court next finds that Mr. Sharafabadi has not come forward with or otherwise identified evidence sufficient to withstand summary judgment as to his indirect infringement claims. As already discussed, Mr. Sharafabadi's complaint does not make out a plausible claim against MSM. Looking outside the complaint, Mr. Sharafabadi also has not made any showing with respect to MSM's intent or knowledge, nor has he presented more than a mere scintilla of evidence that another party directly infringed the '186 Patent. None of the bald assertions made by Mr. Sharafabadi throughout his briefing establish a genuine dispute of material fact.[3]

In sum, Mr. Sharafabadi has not carried his burden of showing a genuine dispute of material fact as to his infringement by inducement and contributory infringement claims against MSM. Even viewing the evidence in the light most favorable to Mr. Sharafabadi, the court concludes that summary judgment in favor of MSM is appropriate.

**D.    35 U.S.C. § 271(g)**

Patent law provides that whoever "offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable

---

[3] The court likewise is not persuaded by Mr. Sharafabadi's arguments regarding mootness, Minn-Dak, and any alleged partnership between MSM and IRF as previously discussed, even assuming these arguments extend to Mr. Sharafabadi's indirect and contributory infringement claims.

ORDER- 13

as an infringer . . . ." 35 U.S.C. § 271(g).  With respect to the question of whether a product is "made by a process patented in the United States," the Federal Circuit explains that the patented process "must be used directly in the manufacture of the product, and not merely as a predicate process to identify the product to be manufactured." *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1378 (Fed. Cir. 2003).  For example, "[a] drug product, the characteristics of which were studied using the claimed research processes . . . is not a product 'made by' those claimed processes." *Id*. at 1377.

Here, Mr. Sharafabadi alleges that the University of Idaho used the '186 Patent "as a Research Tool and Research Material in making, producing and development of the IdaGold and other new advanced breeding lines and cultivars of yellow mustard seeds." (Compl. ¶ 28.)  Although Mr. Sharafabadi "claims sole proprietary rights to the IdaGold," he does not allege that the University of Idaho or any other entities used the '186 Patent to directly produce the IdaGold seeds; rather, he alleges only that the University of Idaho used the '186 Patent as a research tool and research material to test the characteristics of various yellow mustard seeds.  These factual allegations, even accepted as true, are insufficient to make out a § 271(g) claim.  Mr. Sharafabadi does not allege that MSM or any other defendant used the '186 Patent to directly manufacture or directly produce the IdaGold seeds.  *See Bayer AG*, 340 F.3d at 1378.  In other words, he does not allege that the process taught by the '186 Patent directly manufactured or directly produced the IdaGold.  Likewise, he does not allege that MSM sells mustard gum.  Mr. Sharafabadi disputes the applicability of *Bayer AG* to the facts of his case, but does not show how or why the court should follow a different approach.  Even taking Mr. Sharafabadi's

allegations as true, MSM cannot be held liable under § 271(g) as a matter of law. Mr. Sharafabadi makes no showing that a different result is warranted. Therefore, viewing the evidence in the light most favorable to Mr. Sharafabadi, the court concludes that summary judgment in favor of MSM is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS MSM's motion for summary judgment (Dkt. # 92). The court declines to award attorney's fees on this showing.

Dated this 22nd day of February, 2010.

JAMES L. ROBART
United States District Judge